432 So.2d 308 (1983)
STATE of Louisiana
v.
Charles W. CONNORS, Jr.
No. 83-KA-263.
Court of Appeal of Louisiana, Fifth Circuit.
May 17, 1983.
*309 Milton P. Masinter, New Orleans, for defendant-appellant.
John M. Mamoulides, Dist. Atty., William C. Credo, III, Research & Appeals, Steven Little, Andrea Price, Asst. Dist. Attys., Gretna, for plaintiff-appellee.
Before BOUTALL, GRISBAUM and DUFRESNE, JJ.
DUFRESNE, Judge.
The defendant, Charles W. Connors, Jr. was convicted in a non-jury trial of aggravated assault. He was sentenced to six months in the Parish Prison and ordered to pay a fine of $500.00. The prison sentence was suspended and the defendant was placed on two years of active probation with special conditions that he pay $500.00 to the Indigent Defender Board, serve sixty days in Parish Prison, take a bus trip to Angola and that he give $500.00 or alternative service work for charity. (We note that there exists a discrepancy with the sentence as reported in the transcript and the commitment filed in the record). The defendant now appeals this conviction and although no assignments of error were submitted by the defendant, he has set forth two assignments of error in his brief which we will consider here on appeal.

FACTS:
On Sunday, May 17, 1981, at about 10:00 A.M., the defendant's mother (Mrs. Dorothy Robinson) went to the front of her residence to pick up her newspaper when she discovered that her home and both cars had *310 been "egged and rolled". At that same time, two young men from the neighborhood rode by on a motorcycle and according to Mrs. Robinson, one of the boys, Randy Romain (the victim) exposed his genitals to her and made an obscene remark. Mrs. Robinson's two daughters observed this and ran inside to arm themselves with pool cues. The daughters admitted chasing the boys on the levee which was two houses down the road. The younger girl broke her pool cue over the victim. The screaming and shouting from both factions apparently created a disturbance as several of the neighbors came outside. The neighbors testified that they observed Mrs. Robinson's son, Charles Connors exit his house with a gun which he then pointed in the direction of the victim on the levee and fired one shot. Mrs. Robinson then gathered her children in the house and the police were summoned.
It should be noted that Mrs. Robinson and her children are a black family, who had recently moved into an all-white neighborhood.
The defendant was charged under a signed Bill of Information, citing the charge of aggravated assault. He pled not guilty to the charge at his arraignment, where he was represented by counsel. The defendant was tried by the court, as per La.C.Cr.P. art. 779, as the charge was a misdemeanor with maximum punishment of six months and/or a fine of $500.00. The court found the defendant guilty and imposed the aforementioned sentence.

Assignment of Error Number One
The defense maintains that the State failed to prove its case beyond a reasonable doubt and that only circumstantial evidence was presented that the defendant did fire a gun at the victim, Randy Romaine.
The standard of review relative to the sufficiency of evidence is that originally stated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1969) and more recently in State v. Fuller, 418 So.2d 591, 592 (La.1982), which held that, "[t]he question we must answer is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt."
More particularly, the defense cites LSA R.S. 15:438, which states the rule as to circumstantial evidence, "Assuming every fact to be proven that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." According to the defense, the state failed to meet its burden of proof as no evidence was presented to contradict the testimony that the gun could not have been fired as it was inoperable.
In our opinion, the State did meet the burden of proof beyond a reasonable doubt that the defendant, Charles W. Connors, Jr., did in fact commit an aggravated assault upon Randy Romaine by firing one shot from a handgun in the direction of the victim.
Four witnesses were presented by the state, who testified that the defendant fired one shot at the victim. Mrs. Gloria Cambur, a neighbor, stated that she observed the defendant raise what appeared to be a .38 revolver with a four inch barrel in his right hand and fire one shot. Mrs. Rae Ann Dimaggio, also a neighbor, testified that she saw Mr. Connors stand in the middle of the street, raise his arm and fire one shot toward the levee. Joseph LaFranca, who also lived in the neighborhood, stated that the defendant fired directly at him and the victim, who was standing next to him on the levee. The victim, Randy Romaine, testified that the defendant's mother had been standing in front of the defendant arguing, when the defendant raised the gun and fired it in his (Romaine's) direction. A fifth witness, Mrs. Gloria Gleason, testified that although she did not actually see the defendant fire the gun, she did hear a shot coming from the direction in which the defendant was standing.
Mrs. Dorothy Robinson, the defendant's mother, stated that although her son had taken an antique gun out of the house, that perhaps the shot came from the levee.
*311 Both Lafranca and Romaine testified that the gun presented at trial by the defense did not appear to be the gun fired by the defendant.
LSA-R.S. 14:36 defines assault as "an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." Article 37 defines aggravated assault as "an assault committed with a dangerous weapon."
The defense places great weight on the hypothesis that the gun brandished by the defendant was inoperable and therefore could not have been fired. The firing of the weapon is not an essential element of the crime of aggravated assault. An assault occurred when the defendant intentionally raised the gun as if to aim it and thereby placed the victim in reasonable apprehension of receiving a battery. Sufficient evidence was presented by the state to prove this aiming of the gun. Evidence that the gun was capable of being fired is not essential to prove the elements of the crime.
The assault is categorized as aggravated because the manner in which the gun was used was likely to produce death or great bodily harm. Therefore, as per LSA-R.S. 14:2(3), the gun, in whatever, condition, qualifies as a dangerous weapon. The issue of the actual capabilities of the gun is discussed in State v. Gould, 395 So.2d 647, 655 (La.1981).
A review of the jurisprudence reveals that even an inherently harmless object can be classified as a dangerous weapon when used to replicate such a weapon because such a use is likely to produce death or great bodily harm. The rationale behind this holding was expressed in the case of State v. Johnston, 207 La. 161, 20 So.2d 741 (La.1944):
"Usually in a situation of that kind the person so assaulted attempts to escape, to wrest the gun from the assailant, or to deliver to him some death dealing blow; and, in making any of these attempts, serious injury often results. Moreover, under the circumstances that existed here, as the trial judge correctly points out, `the complainants, in order to repel their assailant, would have been justified if they had either inflicted great bodily harm upon him or slain him, because it was reasonable for them to believe that their lives were placed in danger by the conduct of the defendant.'"
The last element of aggravated assault to be dealt with concerns the intent of the defendant. LSA-R.S. 14:11 states that "in the absence of qualifying provisions, the terms `intent' and `intentional' have reference to `general criminal intent.'" State v. Dardar, 353 So.2d 713, 715-16 (La.1977) reviewed this concept.
[G]eneral criminal intent exists when the defendant, `in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act....' LSA-R.S. 14:10. [Emphasis supplied.]
In State v. Elzie, La., 343 So.2d 712 (1977), we stated:
"In summary, specific intent is present when from the circumstances the offender must have subjectively desired the prohibited result. On the other hand, general intent exists when from the circumstances the prohibited result may reasonably be expected to follow from the offender's voluntary act, irrespective of any subjective desire on his part to have accomplished such result." [Emphasis supplied.]
The trial court found that the requisite intent on the part of the defendant did exist.
Relying on Gould, supra, the defense maintains that as a reasonable hypothesis of evidence was presented, the trial court erred in finding the defendant guilty of aggravated assault. Gould can, however, be distinguished in that only circumstantial evidence of a dangerous weapon was presented by the state. In the instant case, the state's case is based on the testimony of five witnesses who actually saw or heard a shot fired by the defendant. This constitutes direct evidence.
*312 It was the defense who introduced the allegedly inoperable firearm into evidence as the basis for their hypothesis. The state countered this evidence with the testimony of two of their witnesses, who expressed doubt as to whether this was the gun fired by the defendant.
The trial court was able to view the witnesses and make a judgment as to their veracity. Furthermore, the record contains sufficient evidence of the elements of the crime of aggravated assault, which when reviewed in the light most favorable to the prosecution, would support the decision of the trial court.
This assignment of error lacks merit.

Assignment of Error Number Two
Defendant assigns as error that the trial court erred in that it imposed an illegal sentence.
The defendant was sentenced to the maximum sentence, six months in the parish prison and a $500.00 fine. The court suspended the six month sentence and placed the defendant on 2 years of active probation. One of the conditions of probation is that he serve sixty days in parish prison.
The defense notes that LSA-C.Cr.P. art. 894(A) allows for a suspension of sentence and a probation up to a period of two years. LSA-C.Cr.P. art. 895 list various possible conditions of probation, however, paragraph (B) of art. 895 limits an additional term of imprisonment as a condition of probation only in felony cases. As the defendant was convicted of a misdemeanor, he is excluded from the additional sixty days imposed by the trial court.
State v. Wagner, 410 So.2d 1089, 1091 (La.1982) dealt with the imposition of a similar sentence. The court held that
"The maximum penalty provided for the crime is six months imprisonment. He was sentenced to serve six months in parish prison, suspended. Requiring defendant to serve one month imprisonment (in this case, as an additional condition of probation) exposes defendant to the risk of serving seven months in jail in the event his probation should be revoked. Seven months exceeds the maximum prison term authorized by R.S. 14:35."
The additional sixty days imposed on the defendant, Connors, exposes him to the risk of an eight month sentence.
Wagner, supra, also noted that LSA-C. Cr.P. art. 895 limits the imposition of a prison term as a condition of probation to felony cases.
Accordingly, the sentence of the district court of May 4, 1982, insofar as it orders the defendant, Charles W. Connors, Jr. to serve 60 days in Parish Prison as a condition of probation, is illegal and is reversed and set aside.
For the reasons assigned the conviction of the defendant is affirmed, but the sentence is set aside and the case is remanded for resentencing in accordance with the views expressed herein.
CONVICTION AFFIRMED
SENTENCE SET ASIDE
CASE REMANDED FOR RESENTENCING